******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* ERNEST FRANCIS
## (AC 41183)

DiPentima, C. J., and Alvord and Conway, Js.

*Syllabus*

The defendant, who previously had been convicted of the crime of murder and sentenced to fifty years of incarceration, appealed to this court from the judgment of the trial court denying his motion to correct an illegal sentence. Prior to sentencing, the sentencing court was provided with a presentence investigation report detailing the defendant's prior criminal history, including that he previously had been convicted of conspiracy to sell cocaine and assault in the second degree. During the sentencing hearing, the prosecutor advised the court that the report was not accurate and that the defendant in fact previously had been convicted of conspiracy to possess cocaine and assault in the third degree. In reciting the facts on which it based its sentence, the sentencing court stated, inter alia, that the defendant had inflicted a graze wound on the victim before he fatally stabbed him in the chest. In his motion to correct, the defendant alleged that his sentence was illegal because the court substantially relied on materially false information regarding his prior criminal history and misconstrued the evidence at trial surrounding the underlying crime. In denying the motion, the trial court concluded that there was no indication that the sentencing court substantially relied on materially inaccurate information. On the defendant's appeal to this court, *held* that the trial court properly denied the defendant's motion to correct an illegal sentence, as neither the purported inaccuracies contained in the presentence investigation report nor the sentencing court's account of the manner in which the underlying murder occurred supported the conclusion that the defendant's sentence was imposed in an illegal manner: although the sentencing court incorrectly noted that the defendant had been convicted of conspiracy to sell cocaine, this error was not a substantial factor in its determination of the appropriate sentence, as the court expressly considered the fact that the defendant had incurred three separate felony convictions by the age of nineteen, that he was involved in drugs and that he was on probation when he murdered the victim, and those considerations were not impugned by any discrepancy between the defendant's actual criminal record and the record that was provided in the report, and, therefore, the record demonstrated that the court did not substantially rely on those inaccuracies in imposing its sentence; moreover, the sentencing court's recitation of the evidence regarding the manner in which the defendant committed the underlying offense was not materially inaccurate, nor was the disputed fact that the victim sustained a graze wound substantially relied on by the court, as the defendant's sentence clearly was predicated on his killing the victim by stabbing him in the chest and not on the graze wound.

Argued March 13—officially released July 2, 2019

*Procedural History*

Substitute information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of Hartford-New Britain at Hartford, and tried to the jury before *Miano, J.*; verdict and judgment of guilty, from which the defendant appealed to the Supreme Court, which affirmed the judgment; thereafter, the court, *Dewey, J.*, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel,

for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Rita M. Shair*, senior assistant state's attorney, and *Elizabeth S. Tanaka*, former assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Ernest Francis, appeals from the judgment of the trial court denying his motion to correct an illegal sentence filed pursuant to Practice Book § 43-22. On appeal, the defendant claims that his sentence was imposed in an illegal manner because the court substantially relied on materially inaccurate information concerning his prior criminal history and the manner in which he had committed the underlying crime. We disagree and, thus, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The defendant was convicted of murder in violation of General Statutes § 53a-54a (a), and, on April 15, 1992, was sentenced to fifty years of incarceration. See *State* v. *Francis*, 228 Conn. 118, 635 A.2d 762 (1993). Prior to sentencing, the court, *Miano, J.*, was provided with a presentence investigation report (presentence report) detailing the defendant's prior criminal history. The presentence report indicated that the defendant had been convicted previously of conspiracy to sell cocaine and assault in the second degree. During sentencing, the prosecutor informed the court of the details surrounding the apparent conviction of conspiracy to sell cocaine and noted that there seemed to be a discrepancy between the offense of which he was charged initially, conspiracy to sell cocaine, and the offense of which he was convicted, conspiracy to possess cocaine. The prosecutor also advised the court that the defendant had not been convicted of assault in the second degree, as indicated in the report, but, rather, assault in the third degree.

In discussing the reasons for its sentence, the court, *Miano, J.*, reviewed the events that transpired on the day the defendant murdered the victim. In so doing, the court indicated that the defendant had stabbed the victim more than once during the underlying altercation. After recounting the relevant facts based on the evidence at trial, the court noted that the defendant, at the age of nineteen, had three felony convictions. After noting that one of "[t]he purposes of sentencing" is deterrence, the court sought to send a message to "the young men like the defendant that appear macho, that are involved in drugs, that have cars, attractive new cars, that have jewelry, that have money, [and] that have attractive ladies," that "[they] have to think before they commit such an act like this." Thereafter, the court sentenced the defendant to fifty years of incarceration.

On December 30, 2016, the defendant filed the motion to correct an illegal sentence that is the subject of the present appeal.[1] In the memorandum of law accompanying his motion, the defendant alleged that his sentence was illegal because the trial court substantially relied on materially false information regarding his prior

criminal history and misconstrued the evidence at trial surrounding the underlying crime. On August 10, 2017, the court, *Dewey, J.*, denied the defendant's motion, concluding, inter alia, that there was no indication that the sentencing court substantially relied on materially inaccurate information. This appeal followed. Additional facts will be set forth as needed.

The defendant claims that the trial court improperly concluded that the sentencing court did not substantially rely on materially inaccurate information regarding his prior criminal history and the manner in which the underlying offense was committed. We do not agree and, therefore, affirm the judgment of the trial court.

We begin our analysis of the defendant's claim by setting forth our standard of review and applicable legal principles. Practice Book § 43-22 provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." "[A] claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is reviewed pursuant to the abuse of discretion standard. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Bozelko*, 175 Conn. App. 599, 609, 167 A.3d 1128, cert. denied, 327 Conn. 973, 174 A.3d 194 (2017).

"[A]n illegal sentence is essentially one [that] either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. By contrast . . . [s]entences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way [that] violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . *or his right to be sentenced by a judge relying on accurate information or considerations solely in the record*, or his right that the government keep its plea agreement promises . . . . These definitions are not exhaustive, however, and the parameters of an invalid sentence will evolve . . . as additional rights and procedures affecting sentencing are subsequently recognized under state and federal law." (Emphasis added; internal quotation marks omitted.) *State* v. *Jason B.*, 176 Conn. App. 236, 243–44, 170 A.3d 139 (2017).

"[D]ue process precludes a sentencing court from relying on materially untrue or unreliable information in imposing a sentence. . . . To prevail on such a claim as it relates to a [presentence report], [a] defendant [cannot] . . . merely alleg[e] that [his presentence

report] contained factual inaccuracies or inappropriate information. . . . [He] must show that the information was materially inaccurate and that the [sentencing] judge relied on that information. . . . A sentencing court demonstrates actual reliance on misinformation when the court gives explicit attention to it, [bases] its sentence at least in part on it, or gives specific consideration to the information before imposing sentence." (Emphasis omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Petitpas*, 183 Conn. App. 442, 449–50, 193 A.3d 104, cert. denied, 330 Conn. 929, 194 A. 3d 778 (2018).

In claiming that his sentence was imposed in an illegal manner, the defendant points to several purported inaccuracies in the presentence report. Specifically, he asserts that the report incorrectly indicated that he had been convicted of conspiracy *to sell* cocaine, when in fact he was convicted of conspiracy *to possess* cocaine. The defendant argues that the record demonstrates substantial reliance on this inaccuracy in light of the sentencing court's description of him as a drug dealer who had "new cars," "jewelry," "money" and "attractive ladies," despite the fact that he never had been convicted of selling drugs. Further, the defendant submits that, although the prosecutor informed the court of the inaccuracy in the presentence report concerning his assault conviction, the state failed to correct the portion of the report that erroneously indicated that the victim of that assault was an elderly person and that the defendant's sentence for this conviction had been illegal.[2] The defendant contends that the court substantially relied on these errors when it intimated that the defendant was a "violent predator attacking the weak and infirm," rather than just a child caught up in "a senseless and tragic neighborhood fight."

Additionally, the defendant claims that the court substantially relied on an inaccurate account of the manner in which the underlying murder offense occurred. In particular, the defendant argues that the evidence at trial indicated that the victim had sustained only a single stab wound during the altercation that resulted in his death. During its recitation of the evidence, however, the sentencing court stated that the victim had suffered a "graze" wound prior to being fatally stabbed in the chest. The defendant contends that this material inaccuracy was substantially relied on by the court and served to portray the defendant as a "more determined and violent individual than the evidence actually showed."

With respect to the presentence report, we conclude that the trial court did not abuse its discretion in concluding that the sentencing court did not substantially rely on the inaccuracies concerning the defendant's prior criminal history. Although the sentencing court incorrectly noted that the defendant had been convicted of conspiracy to sell cocaine, this error was not a sub-

stantial factor in the court's determination of the defendant's appropriate sentence. Rather, as it relates to the defendant's prior criminal history, the court expressly considered the fact that the defendant had incurred three separate felony convictions by the age of nineteen,[3] that he was "involved in drugs" and that he was on probation when he murdered the victim. None of those considerations is impugned by any discrepancy between the defendant's actual criminal record and the record that was provided in the presentence report. Similarly, the court made no mention at all of the defendant's purported prior assault of an elderly person. Thus, despite the state's failure to correct all of the errors in the presentence report relating to the defendant's criminal history, the record demonstrates that the court did not substantially rely on these inaccuracies in imposing its sentence.[4] See *State* v. *Petitpas*, supra, 183 Conn. App. 449–50.

Further, we agree with the trial court that the sentencing court's summarization of the evidence regarding the manner in which the defendant committed the underlying offense was not materially inaccurate, nor was the disputed fact—namely, whether the victim sustained a "graze" wound—substantially relied on by the court. At trial, several witnesses testified that the defendant made multiple stabbing motions toward the victim prior to inflicting the lethal blow.[5] Although the defendant is correct that the evidence indicated that the victim sustained a single fatal injury, the court's statement that the victim was "grazed" prior to being stabbed to death was not without a modicum of support in the record. See *State* v. *Francis*, supra, 228 Conn. 121. Moreover, the defendant's sentence clearly was predicated on his killing the victim by stabbing him in the chest, not on the disputed graze wound.

Neither the purported inaccuracies contained in the defendant's presentence report nor the court's account of the manner in which the underlying murder occurred support the conclusion that the defendant's fifty year sentence was imposed in an illegal manner. Consequently, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The present motion is predicated on the same grounds as an earlier motion to correct an illegal sentence that the defendant, then self-represented, filed on July 12, 2010, and amended on October 12, 2010. That motion was denied by the trial court, *Gold, J.*, and the defendant appealed to this court, which reversed the trial court's judgment on the ground that the trial court was required to follow the procedure set forth in *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), before it properly could deny the defendant's request for the appointment of counsel. See *State* v. *Francis*, 148 Conn. App. 565, 590–91, 86 A.3d 1059 (2014), rev'd, 322 Conn. 247, 140 A.3d 927 (2016). The state appealed to our Supreme Court, which reversed the judgment of this court on the ground that the "*Anders* procedure is not strictly required to safeguard the defendant's

statutory right to counsel in the context of a motion to correct an illegal sentence." *State* v. *Francis*, 322 Conn. 247, 250–51, 140 A.3d 927 (2016). The court concluded, however, that the trial court "improperly failed to appoint counsel to assist the defendant in determining whether there was a sound basis for him to file such a motion," and, thus, remanded the case to the trial court so that counsel could be appointed to represent the defendant. Id., 251.

[2] The defendant argues that because he was convicted of assault in the third degree, which was a class A misdemeanor punishable by no more than one year in prison, the four year sentence he received was illegal and, thus, an inaccuracy that the court substantially relied on.

[3] The defendant's three felony convictions were (1) possession of narcotics in violation of General Statutes (Rev. to 1989) § 21-279 (a), (2) conspiracy to possess cocaine in violation of General Statutes § 53a-48 (a) and General Statutes (Rev. to 1989) § 21-279 (a), and (3) murder in violation of § 53a-54a (a). Despite the fact that the court referred to the second conviction as conspiracy to sell cocaine, the actual conviction the defendant received nonetheless was a felony conviction.

[4] We also disagree with the defendant's assertion that because his previous sentence for assault in the third degree allegedly was illegal, the sentencing court was not permitted to rely on the fact that he was on probation when he committed the underlying murder. Regardless of the merits of the defendant's argument that his sentence for his conviction of assault in the third degree was illegal, the defendant does not dispute that he was on probation when he committed this murder; accordingly, this fact was not materially inaccurate when it was relied on by the sentencing court.

[5] "On August 12, 1990, the defendant and the victim met again. At approximately 4 p.m. on that day, two witnesses, Jennifer Green and Sandra Brown, were on the porch of Brown's residence at 165 Homestead Avenue in Hartford. At that time, they saw a young man, later determined to be the victim, walking toward them on Homestead Avenue, holding an 'ice pop' in his hand. At the same time, two additional witnesses, Victor Lowe and Fred Faucette, were standing on the sidewalk of Homestead Avenue. They also noticed the victim.

"All four witnesses then observed a red Mitsubishi automobile drive up Homestead Avenue, pass the victim, stop suddenly, back up and halt near him. The defendant then emerged from the driver's side of the car and approached the victim. An argument ensuedbetween the two men. This confrontation occurred twenty to forty feet from Lowe and Faucette.

"While the defendant and victim exchanged words, the four witnesses observed, from different vantage points, that the defendant held his right hand behind his back. From where they were located, both Green and Brown observed that the defendant's hand, which was behind his back, was on the handle of a knife. Upon seeing the knife, Brown commented to Green, 'He wouldn't dare do that.'

"After further words had been exchanged, the victim agreed to fight the defendant. The victim did not, however, make any physical movement toward the defendant. The defendant then pulled the knife from behind his back and began to make stabbing motions at the victim. One of these stabbing motions cut the victim's ice pop in half as the victim was retreating.

"The victim ran into a nearby yard where he was pursued by the defendant. There, the defendant stabbed the victim in the upper left portion of his chest, causing his death. The defendant then reentered the car and left the scene. He was arrested in Miami, Florida, on August 17, 1990." *State* v. *Francis*, supra, 228 Conn. 120–21.